IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CHRISTOPHER J. R.,

      Plaintiff,

  v.                                  Civil Action No.
                                            5:24-CV-519 (DEP)

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

      Defendant.
_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

DENNIS KENNY LAW              JOSEPHINE GOTTESMAN, ESQ.
228 North Plank Road
Newburgh, NY 12550

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        MOLLY CARTER, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§ 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on September 10, 2025, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

    3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

                                                              David E. Peebles
                                                             U.S. Magistrate Judge

Dated:    September 25, 2025
              Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------x
CHRISTOPHER J.R.,

                        Plaintiff,

vs.                                      5:24-cv-519

Commissioner of Social Security,

                        Defendant.
------------------------------------------------x
```

**DECISION**

held on September 10, 2025

the HONORABLE DAVID E. PEEBLES,

United States Magistrate Judge, Presiding


<u>APPEARANCES</u>  (by telephone)

```
For Plaintiff:    DENNIS KENNY LAW
                  288 North Plank Road
                  Newburgh, NY 12550
                  BY:  JOSEPHINE GOTTESMAN, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  Office of Regional General Counsel
                  6401 Security Boulevard
                  Baltimore, MD 21235
                  BY:  MOLLY CARTER, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1    THE COURT:  Before I address the merits of the
2    case, I wanted to broach the subject of consent.  When the
3    case was originally filed, it was assigned to another
4    magistrate judge.  The consent form that was filed dated
5    April 12, 2024, docket number 6, presumably consented to the
6    jurisdiction of that particular magistrate judge to hear and
7    decide the case, although the blank that is there for the
8    name of the specific magistrate judge is not filled in.
9    Attorney Gottesman, does the plaintiff consent to
10   my hearing and deciding the case with direct appeal to the
11   Second Circuit Court of Appeals?
12   MS. GOTTESMAN:  We consent, your Honor.
13   THE COURT:  Thank you.
14   Plaintiff has commenced this proceeding pursuant to
15   42, United States Code, Section 405(g) to challenge an
16   adverse determination by the Commissioner of Social Security
17   finding that he was not disabled at the relevant times and
18   is, therefore, not eligible for the disability insurance
19   benefits for which he applied.  The background is as follows.
20   Plaintiff was born in January of 1971.  He is
21   currently 54 years of age.  He was 49 years old -- counsel,
22   can you mute your phones, please?
23   MS. GOTTESMAN:  I'm sorry, your Honor, I didn't get
24   that.
25   THE COURT:  Can you mute your phone?

1          MS. GOTTESMAN:  Yes, I can.
2          THE COURT:  Thank you.  Plaintiff was 49 years old
3  at the alleged onset of disability on October 4, 2020.  He is
4  6-feet 2-inches in height.  He weighs 290 pounds
5  approximately.  By body mass index he would be characterized
6  as obese, although as the administrative law judge pointed
7  out, he has been described as fairly muscular.
8          Plaintiff has a high school degree and one year of
9  college education.  While in school he was in regular
10 classes.  He also holds a license, or did, as a licensed
11 practical nurse.  He served in the Marines from 1989 to 1993
12 and was honorably discharged.  Plaintiff drives but does not
13 take public transportation.
14         Plaintiff worked from June of 1998 until
15 October 2020 as a corrections worker achieving ultimately the
16 rank of lieutenant.  According to the Administrative
17 Transcript, he primarily quit for psychological reasons.
18 That's at page 120 and 644 of the Administrative Transcript.
19 He also had some brief sporadic employment in 2013 in an
20 adult home overseeing medications as he was contemplating a
21 change in careers at that point.
22         Physically, plaintiff suffers from lumbar and
23 cervical degenerative disc disease; right shoulder pain post
24 surgery, which was performed in 2021; right elbow pain post
25 debridement surgery in 2015; right knee pain; left shoulder

1   pain; sleep apnea; hypertension; and high cholesterol.

2           Mentally, he suffers from depressive disorder,
3   affective disorder, and post traumatic stress disorder.  For
4   his mental condition, he receives monthly treatment at the VA
5   but has not been psychologically hospitalized.

6           Plaintiff's activities of daily living are set
7   forth in many locations in the record, including at
8   Administrative Transcript pages 329, 645 and 651.  Plaintiff
9   is able to shower and/or bathe, groom, dress, shop weekly.
10  He engages in meal preparation.  He can do laundry.  He can
11  clean.  He watches television.  He listens to music.  He
12  reads, and he spends time with family.  By the way, I forgot
13  to mention that he does live alone in an apartment in Auburn,
14  New York.

15          At page 407, a treatment note from October 3, 2020
16  described plaintiff as very active, exercising almost daily
17  with both cardio and weight training.  On October 21, 2021,
18  at page 1048, he noted that he was remodeling a house.  On
19  January 18, 2022, that's at page 1248, again noted to a
20  treatment provider he was remodeling a house.  On August 5,
21  2021, this is at 1386 of the Administrative Transcript, he
22  went to a clinic where he stated that he injured his eye when
23  he was engaged in construction without eye protection,
24  although he has later claimed that he was not doing
25  construction, he was merely there for cellulitis.  Plaintiff

1   is a smoker.  He smokes one pack of cigarettes per day.
2              On February 19, procedurally, 2021, he applied for
3   Title II benefits, alleging an onset date of October 4, 2020.
4   At page 302 he claimed disability based on post traumatic
5   stress disorder, depression, anxiety, high blood pressure,
6   high cholesterol, bilateral shoulder injury, right elbow
7   injury, back injury and neck injury.
8              On June 30, 2021, a hearing was conducted by
9   Administrative Law Judge Sarah Zimmerman with a vocational
10  expert testifying at that hearing.  On July 17, 2023, after
11  apparently the matter was transferred, Administrative Law
12  Judge Aaron Morgan issued an unfavorable decision, which
13  became a final determination of the Agency on February 15,
14  2024, when the Social Security Administration Appeals Council
15  denied plaintiff's application for review.  This action was
16  commenced on April 12, 2024, and is timely.
17             In his decision, ALJ Morgan applied the familiar
18  five-step sequential test for determining disability.  He
19  first noted that plaintiff is insured through December 31,
20  2025.
21             At step one ALJ Morgan concluded plaintiff had not
22  engaged in substantial gainful activity since the alleged
23  onset of his disability.
24             At step two, he found that plaintiff does suffer
25  from severe impairments that impose more than minimum

1   limitations on his ability to perform basic work functions,
2   including degenerative disc disease of the cervical spine and
3   the lumbar spine, hypertension, status post right shoulder
4   surgery, and mental impairments variously characterized as
5   affective disorder, post traumatic stress disorder, and
6   anxiety disorder.
7           At step three, he concluded that plaintiff's
8   conditions do not meet or equal any of the listed
9   presumptively disabling conditions set forth in the
10  Commissioner's regulations, specifically considering listings
11  1.15, 1.16, 1.18, 12.04, 12.06 and 12.15.
12          The administrative law judge next concluded that,
13  notwithstanding his impairments, plaintiff retains the
14  residual functional capacity, or RFC, to perform light work
15  as defined in the regulations with the following exceptions.
16  He can frequently reach in either direction with right upper
17  extremity.  He can occasionally climb ramps, stairs and
18  ladders.  He cannot climb ropes or scaffolds.  He can
19  occasionally balance, stoop, kneel, crouch, and crawl.  He
20  cannot perform work around dangerous machinery or hazardous
21  heights.  He can tolerate occasional changes in the work
22  setting.
23          Applying that RFC at step four, the ALJ concluded
24  that plaintiff is not capable of performing his past relevant
25  work, and then proceeded to step five.

1          At step five, with the assistance of a vocational
2   expert, who was presented with a hypothetical question that
3   was based on the RFC finding, the administrative law judge
4   concluded that plaintiff is capable of performing available
5   work in the national economy, citing as representatives of
6   those positions those of warehouse checker, order caller and
7   collator operator.
8          The Court's function, as the parties know, in this
9   case is extremely limited.  I must determine whether correct
10  legal principles were applied and the resulting determination
11  is supported by substantial evidence.  The court has noted
12  the rigor of this standard in several decisions, including in
13  *Brault versus Social Security Administration Commissioner*,
14  683 F.3d 443, from 2012; and *Schillo v. Kijakazi*, 31 F.4th
15  64, Second Circuit 2022.  As the Second Circuit noted, the
16  substantial evidence standard means that once an ALJ finds a
17  fact, it can be rejected only if a reasonable fact-finder
18  would have to conclude otherwise.
19         The plaintiff in this case raises three
20  contentions.  One, he believes it was error to exclude
21  records submitted on June 14, 2022.  Secondly, he argues that
22  the residual functional capacity finding is not supported,
23  specifically concluding or arguing that reliance on prior
24  administrative medical findings was error and that the ALJ
25  cherrypicked from plaintiff's treatment records.  And

1  thirdly, he argues an error in step five claiming that
2  plaintiff cannot meet the requirements of jobs cited, relying
3  on the Occupational Outlook Handbook, or the OOH, and the
4  O*NET.
5          Turning first to the five-day rule, I went through
6  the timeline of notice to the plaintiff of the five-day rule.
7  I note first that counsel was retained by the plaintiff in
8  February of 2021.  That appears at 397 to 400 of the
9  Administrative Transcript.  On April 17, 2021, a letter was
10 sent to the claimant by the Agency advising of the five-day
11 rule.  That's at 231 to 233.  According to notes in the
12 record, specifically at page 404, voice-mails were left on
13 December 10, 2021 and January 11, 2022 requesting additional
14 records.  On April 4, 2022 two notices of hearing were sent
15 and those notices included advice concerning the five-day
16 rule.  Those appear at 248 to 257 of the Administrative
17 Transcript.  On April 6, 2022, at page 184, plaintiff
18 acknowledged receipt of those notices.
19         On June 16, 2022, plaintiff submitted a brief.  In
20 that brief there was no mention of any records that were
21 missing and needed to be submitted.  On June 30, 2022 a
22 hearing was conducted.  Counsel advised that there was no
23 objection to documents in the record.  That's at 112.  The
24 administrative law judge advised the parties that additional
25 submissions were due by July 8, 2022.  That's at 114 and

1  reiterated at 131.
2          The efforts to obtain the additional VA records I
3  looked at as well.  In the brief, plaintiff claims that the
4  first request was made on April 27, 2022.  There is no other
5  evidence in the record to support that assertion.  The VA on
6  June 23, 2022 received a request for information from the
7  plaintiff.  And that's at page 36.  On July 8, 2022 the VA
8  printed the records and forwarded them to plaintiff's
9  counsel.  The records were submitted on July 14, 2022.  That
10 is the chronology that the administrative law judge was faced
11 with.
12         As the Commissioner has argued, the standard to be
13 applied in this situation, the procedural situation where no
14 findings were made, is abuse of discretion.  *Yancey v. Apfel*,
15 145 F.3d 106, from the Second Circuit 1998.  The five-day
16 rule is set out in the Commissioner's regulations,
17 specifically at 20 CFR Section 404.935.  It states, "Each
18 party must make every effort to ensure that the
19 administrative law judge receives all of the evidence and
20 must inform us about or submit any written evidence, as
21 required in Section 404.1512, no later than five business
22 days before the date of the scheduled hearing."  Subsection
23 (b) of that regulation sets out exceptions.  The only one of
24 those exceptions that would appear to apply in this case is
25 the fourth one, which states, "You actively and diligently

sought evidence from a source and the evidence was not received or was received less than five business days prior to the hearing."  As can be seen, it requires active and diligent effort to secure the evidence.  Here there is no explanation that was offered when the records were submitted for the late submission.  In short, I find no abuse of discretion given the chronology that I just mentioned.

      I also note that plaintiff does not indicate how the additional evidence would have altered the outcome.  I've reviewed the additional evidence.  The new evidence contains 69 pages covering the period from August 18, 2021 to June 14, 2022.  Exhibit 13F, which is in the record, is comprised of 87 pages covering the period from August 24, 2018 to January 18, 2022.  For the most part there is complete overlap.  I did find starting at page 55 through I think 57 records in the new evidence submitted that were not included in 13F and they all appear, those additional pages appear to address plaintiff's sleep apnea.  So even if there was error, I find that it was harmless.  I don't find anything in the new evidence that would have altered or likely altered the result.

      Turning to the residual functional capacity assessment, a claimant's RFC represents a finding of the range of tasks he is capable of performing notwithstanding his impairments.  20 CFR Section 404.1545(a).  *Tankisi versus*

1    *Commissioner of Social Security*, 521 F.App'x 29, at 33,
2    Second Circuit 2013.  That means a claimant's maximum ability
3    to perform sustained work activities in an ordinary setting
4    on a regular and continuing basis, meaning eight hours a day
5    for five days a week or an equivalent schedule.  And of
6    course, an RFC determination is informed by consideration of
7    all of the evidence in the record, including relevant medical
8    and other evidence.
9               In this case the administrative law judge
10   determined that plaintiff has the residual functional
11   capacity that I read earlier.  The ALJ specifically stated he
12   relied on medical opinions.  When evaluating medical
13   opinions, because this case involved an application filed
14   after March 27, 2017, under the revised regulations the
15   Commissioner does not any longer defer to or give any
16   specific evidentiary weight, including controlling weight, to
17   any medical opinions.  Instead, the ALJ must consider whether
18   those opinions are persuasive by primarily considering
19   whether they are supported by and consistent with the record
20   in the case.  20 CFR Section 404.1520(c).  And, of course,
21   the ALJ must articulate how persuasive he or she finds all
22   medical opinions that explain the consideration of
23   supportability and consistency to a degree that would permit
24   meaningful judicial review.
25              It is for the administrative law judge in the first

1    instance to weigh conflicting opinions.  *Veino v. Barnhart*,
2    312 F.3d 578, Second Circuit 2002.
3          In this case the physical component of the RFC was
4    light work with some additional limitations.  Light work
5    involves lifting no more than 20 pounds at a time with
6    frequent lifting or carrying of objects weighing up to
7    10 pounds.  Also 20 CFR Section 404.1567(b), as well as SSR
8    83-10.  The Second Circuit has noted in *Poupore v. Astrue*,
9    566 F.3d 303, Second Circuit 2009, that it also requires the
10   plaintiff to be able to stand and/or walk for six hours in an
11   eight-hour day and can sit intermittently the remainder of
12   the day.
13         As I indicated during oral argument, although
14   plaintiff's counsel argues that he is incapable of lifting
15   and carrying 20 pounds, his treating source SOS, or Syracuse
16   Orthopedic Specialists, and specifically Dr. Warren Wulff,
17   has indicated that he is capable of lifting 20 pounds.  That
18   is at page 447.  It is also reiterated at page 440.  And
19   interestingly, on page 534, there is an indication that the
20   percentage of temporary impairment is zero percent.
21         Mentally, the ALJ relied on prior administrative
22   medical findings of Drs. Sherer and Ochoa, and consultative
23   examiner Dr. Dennis Noia.  I note that contrary to the
24   argument of counsel, prior administrative medical findings
25   can provide substantial evidence if they are supported.

*Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761, Second Circuit, May 22, 2023.  Also *Woytowicz v. Commissioner of Social Security*, 2016 WL 6427787, Northern District of New York, October 5, 2016.  That was a report and recommendation that was adopted at 2016 WL 6426385, October 28, 2016.

Plaintiff, in arguing otherwise, relies on *Lewis v. Colvin*, 122 F.Supp.3d, from the Northern District of New York, District Judge David Hurd, dated August 21, 2015.  That was a very different case, however.  That case was decided under the treating source rule and Judge Hurd noted that great weight should not be accorded to the opinion of a non-examining state agency consultant whose opinion is based on an incomplete record and lacks the opinion of the plaintiff's primary treating psychiatrist.  In this case the prior administrative findings contained narratives that are very detailed, and as I indicated before, they can supply substantial evidence.

Dr. Noia's medical source statement is supported by his findings during the consultative examination.  There really isn't any contrary medical opinion concerning plaintiff's mental abilities, so I find no error with respect to the mental component of the RFC.

Physically, the administrative law judge found the two prior administrative findings of Drs. Mohanty and Vazquez-Gonalez to be the most persuasive.  Dr. Lorensen's

1  was partially persuasive, that was the consultative examiner,
2  but there were some findings that were not incorporated into
3  the RFC and the ALJ explained at page 27 why that was, so I
4  find no error there.
5           The plaintiff doesn't appear to challenge the
6  consistency of supportability directly, and that argument is
7  waived.  But in any event, the discussion of those medical
8  opinions is sufficiently robust to permit meaningful judicial
9  review, so I find no error and that the substantial evidence
10 supports the RFC finding.
11          Turning to step five, clearly it is the
12 Commissioner's burden at step five to prove that there is
13 work available in the national economy that plaintiff is
14 capable of performing.  Vocational expert testimony was
15 elicited at page 29 based on a hypothetical that tracked the
16 RFC.  The administrative law judge concluded based on that
17 testimony that plaintiff could perform as a warehouse
18 checker, order caller and collator operator.  It is proper to
19 seek and base a determination on vocational expert testimony
20 concerning the availability of jobs that a plaintiff can
21 perform if substantial evidence supports the hypothetical,
22 which I find it does, *Rebecca A.H. v. Commissioner of Social*
23 *Security*, 2024 WL 5497139, December 10, 2024, from the
24 Northern District of New York.
25          Plaintiff argues that it was improper to rely on

1   the Dictionary of Occupational Titles, or DOT, which contain
2   some jobs that are obsolete, and argues that the O*NET is a
3   superior resource.  The regulations are clear and the case
4   law is clear the vocational expert testimony must comply with
5   the DOT.  *Ryan v. Astrue*, 650 F.Supp.2d 207, Northern
6   District of New York 2009.
7           In this case the administrative law judge asked at
8   page 128 if the testimony of the vocational expert was in
9   conflict with the DOT, and the reply was that it was not.
10  Courts in this circuit continue to uphold reliance on the DOT
11  to the exclusion of the O*NET.  *Nicoletti v. Commissioner of*
12  *the Social Security Administration*, 2022 WL 6250371, from the
13  Southern District of New York, February 28, 2022; *Strong v.*
14  *Berryhill*, 2019 WL 2442147, Western District of New York,
15  June 12, 2019; and *Rebecca A.H.*, which I cited earlier, and I
16  note that plaintiff's counsel in this case was also the
17  attorney for the plaintiff in that case.
18          I also went through carefully the plaintiff's brief
19  concerning this point, and I didn't see any aspects of the
20  job as described by the O*NET that plaintiff cannot fulfill.
21  In any event, I don't find there was any error.  I can see
22  that the DOT is starting to show its age and there may be an
23  argument to be made that some of the jobs are somewhat
24  obsolete, but the number cited by the vocational expert are
25  so extensive and far exceed the number required to carry the

1   burden at step five that I find no error.
2           So, in conclusion, I find that correct principles
3   were applied, and substantial evidence supports the resulting
4   determination, and so I'll grant judgment on the pleadings to
5   the defendant affirming the Commissioner's determination and
6   dismissing plaintiff's complaint.
7           Thank you both for excellent presentations.  I hope
8   you enjoy the rest of your day.
9                  *              *              *

```
 1
 2                    C E R T I F I C A T I O N
 3
 4          I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
 5   Realtime Court Reporter, in and for the United States
 6   District Court for the Northern District of New York,
 7   do hereby certify that pursuant to Section 753, Title 28,
 8   United States Code, that the foregoing is a true and correct
 9   transcript of the stenographically reported proceedings held
10   in the above-entitled matter and that the transcript page
11   format is in conformance with the regulations of the
12   Judicial Conference of the United States.
13
14
15
16                     _____
17                          EILEEN MCDONOUGH, RPR, CRR
                            Federal Official Court Reporter
18
19
20
21
22
23
24
25
```